UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:13-cr-00058-JAW |
| | ) | |
| PATRICK M. CURLEY | ) | |

## ORDER ON MOTION FOR STAY OF VOLUNTARY SURRENDER AND FOR BAIL PENDING APPEAL

On January 16, 2015, the Court sentenced Patrick M. Curley to 24 months' imprisonment and ordered him to self-report on April 17, 2015. With that date approaching, Mr. Curley asks the Court to stay his voluntary surrender and for bail pending appeal to the First Circuit, pursuant to 18 U.S.C. § 3143(b). The Court denies his motion. Mr. Curley intends to raise two issues to the First Circuit that he says are substantial questions of law likely to result in a shorter term of imprisonment. As to the first issue, the Court denies his request because it is not a "close question." As to the second issue, the Court denies his request because Mr. Curley intends to raise a new issue and he has not met his burden to prove that the Court committed any error, much less "plain error."

## I.   BACKGROUND

### A.   Indictment, Change of Plea, Prosecution Version, Sentence, and Appeal

#### 1.   The Charge and Guilty Plea

On March 21, 2013, a federal grand jury indicted Patrick M. Curley on one count of extortion, in violation of 18 U.S.C. § 875(d). *Indictment* (ECF No. 2). On

May 29, 2013, Mr. Curley entered a plea of not guilty.  *Minute Entry* (ECF No. 10).

On April 7, 2014, Mr. Curley entered a plea of guilty, which the Court accepted.

*Minute Entry* (ECF No. 72).

## 2. The Admitted Prosecution Version and Sentencing Hearing Emails

According to the Second Revised Prosecution Version, on March 11, 2010, Mr.

Curley applied for a security job at Vescom, a Maine-based company and, "[a]fter a

series of e-mails and phone calls with Vescom Senior Vice President Pamela

Treadwell, [Mr. Curley] met Ms. Treadwell and her husband, Dana Treadwell, in

New York on April 21, 2010.  *Second Revised Prosecution Version* at 1 (ECF No. 69).

"After the three arrived at an agreed upon location, Mr. Treadwell excused himself

and Ms. Treadwell interviewed" Mr. Curley.  *Id.*  Following the interview, Mr. Curley

expressed interest in the position.  *Id.*

On April 27, 2010, Mr. Curley sent an email to Ms. Treadwell, accusing her

and Mr. Treadwell "of making condescending derogatory remarks against him and of

proposing that he engage in a three-way sexual fantasy in exchange for a job offer."

*Id.*  Notably, he threatened to sue Vescom, stated he would send a notice of intent to

the general counsel of Vescom, and threatened to notify "Vescom's president of her

'egregious, unprofessional, and illegal behavior.'"  *Id.*  On April 28, 2010, Mr. Curley

sent a second email to Ms. Treadwell "in which he alleged he had been discriminated

against, sexually harassed and ridiculed."  *Id.* at 1-2.

Mr. Curley knew the allegations were untrue, and his "intent was to obtain

money or something of value from Vescom to which he had no valid claim of right."

*Id.* at 2. Subsequently, Mr. Curley made the same allegations via email and telephone to Charles Yesnick, general counsel of Vescom. *Id.* Mr. Curley hired an attorney, who "drafted and sent Mr. Yesnick a letter reiterating Defendant's claims and making a settlement demand to resolve the case." *Id.* Furthermore, Mr. Curley emailed Sharif Assal, president of Vescom, accusing Mr. Yesnick of "bad faith" and threatening to go public on his allegations. *Id.*

At the Rule 11 hearing, Mr. Curley admitted that "his intention when he threatened to sue Vescom for Ms. Treadwell's alleged misconduct, and threatened to disclose his claims to the media, was to obtain money or something of value from Vescom to which he had no claim of right." *Id.*

At the January 16, 2015 sentencing hearing, the Government introduced into evidence a series of emails between Attorney Grabell (Mr. Curley's attorney) and Attorney Yesnick and between Attorney Grabell and Mr. Curley. *Gov't Ex.* 6. These emails confirmed the substance of the Prosecution Version in this case. However, they also revealed that in late July or early August 2010, when no progress had been made in negotiations between Attorney Grabell and Attorney Yesnick, Mr. Curley emailed Mr. Yesnick and Vescom directly. *Id. Email from Att'y Yesnick to Att'y Grabell* (Aug. 12, 2010). In this email, Attorney Yesnick informed Attorney Grabell that Mr. Curley threatened to go to "major media" and expose this alleged scandal; Attorney Yesnick also wrote that "[w]hile Mr. Curley has attempted to call this freedom of speech, I believe the legal term for this is called blackmail." *Id.*

### 3. The Presentence Report and Its Guideline Calculations

On July 10, 2014, the Probation Office (PO) issued its final revision of the Presentence Report and recommended the following Guideline calculations:

The PO used United States Sentencing Guidelines (U.S.S.G.) § 2B3.3, the Guideline provision that addresses blackmail and similar forms of extortion. It started with a base offense level under § 2B3.3(a) of 9. It then applied the specific offense characteristic in § 2B3.3(b)(1):

> If the greater of the amount obtained or demanded (A) exceeded $2,000 but did not exceed $5,000, increase by **1** level; or (B) exceeded $5,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

U.S.S.G. § 2B3.3(b)(1). The PO concluded that the amount demanded exceeded $5,000 and it therefore cross-referenced the loss table in § 2B1.1(b)(1). Specifically, the PO concluded that the amount demanded was $130,000 and it fixed a ten-level enhancement under § 2B1.1(b)(1)(F). With a three-level reduction for acceptance of responsibility under § 3E1.1, the total offense level was 16. For a total offense level of 16 and a criminal history category of I, the Guideline ranges for imprisonment was 21 to 24 months, for fine was $5,000 to $50,000, for supervised release was not more than one year, and there was a mandatory special assessment of $100.00.

### 4. Presentence Conferences

The Court held a presentence conference on September 4, 2014. *Minute Entry* (ECF No. 78). Mr. Curley's counsel had interposed an objection to the PO calculations, in particular to the ten-level enhancement and, in view of defense counsel's request to obtain more information, the Court set another presentence conference for September 23, 2014, and that conference was dedicated to a discussion

of whether the PO had correctly applied the ten-level enhancement. *Minute Entry* (ECF No. 82). Counsel agreed to file sentencing memoranda to assist the Court. *Id.*

### 5. The Defendant's Sentencing Memorandum

On November 24, 2014, Mr. Curley filed a sentencing memorandum. *Def.'s Sentencing Mem.* (ECF No. 84) (*Def.'s Mem.*). Mr. Curley agreed that "[t]he sentencing guideline for 18 U.S.C. § 875(d) offenses is found in U.S.S.G. § 2B3.3, and the base level offense is nine (9) pursuant to U.S.S.G. § 2B3.3(a)." *Id.* at 3. Mr. Curley attached a demand letter dated July 1, 2010 from his attorney, Matthew R. Grabell, to Attorney Charles Yesnick of Vescom, in which Attorney Grabell outlined Mr. Curley's allegations against Ms. Treadwell, including a recitation of a conversation between Ms. Treadwell and Mr. Curley that was later determined to have been simply dreamed up by Mr. Curley. The Grabell demand letter concluded:

> Presumably, Vescom would prefer to avoid the costs and notoriety and adverse publicity associated with litigating Mr. Curley's meritorious claims. However, only a compensatory financial settlement will avoid this exposure, as well as the possibility of a jury verdict which could run well into the six, and even seven, figure range.
>
> Toward that end, I have advised my client to delay filing a complaint in state court until you determine your response to our pre-litigation settlement "demand" of $130,000.00, roughly one year of his expected salary plus attorneys' fees.
>
> I must insist, under the circumstances, on a response within ten (10) days of your receipt of this correspondence.

*Id.* Attach. 1 *Letter from Att'y Matthew R. Grabell to Charles Yesnick, Esq.* at 2-3. On July 16, 2010, Attorney Yesnick responded by email:

> I had an initial discussion with my client and if your client[] has aspirations of 100K then we will be defending the case.

*Id.* Attach. 2 *Email from Att'y Yesnick to Att'y Grabell* at 1. Attorney Grabell responded on July 16, 2010:

> [I]f we have any chance of resolving this prior to litigation, as I stated in our telephone conversation last week, I need a counter offer to my client's initial "demand[.]" I assured you that once that is received, and assuming it is not mere nuisance value, my client (on my advice) would respond with a reasonable figure.

*Id.* Attorney Grabell's response provoked an email dated July 18, 2010 from Attorney Yesnick, stating that it is his client's position that this is a "nuisance value incident." *Id.* Attach. 3 *Email from Att'y Yesnick to Att'y Grabell* at 1. Attorney Grabell and Mr. Curley then exchanged emails about "nuisance value." *Id.* Mr. Curley said he was not interested in a "dogfight" so if it refers to $6,000 or $7,000 "so be it." *Id.* Mr. Grabell answered that it "may mean $2,500," but in "some cases it means $10,000"; Attorney Grabell suggested demanding a "[o]ne shot deal of $25,000 and see what he says[.]" *Id.*

Analogizing extortion cases to fraud cases, Mr. Curley argued that "intended loss" refers to a defendant's "subjective intent." *Def.'s Mem.* at 4. Mr. Curley cited a number of circuit cases involving fraud and presented one First Circuit case, *United States v. McCoy*, 508 F.3d 74, 79 (1st Cir. 2007) in which the First Circuit defined the "intended loss" as "the loss the defendant reasonably expected to occur at the time he perpetrated the fraud." *Def.'s Mem.* at 8. Observing that Attorney Grabell had put the word "demand" in quotes, Mr. Curley maintained that "[i]t is not anticipated, and certainly not required, that the sentencing court apply literally the terms of a demand letter, particularly a letter sent prior to the onset of formal litigation, as an opening

communication between counsel for the parties to the potential dispute." *Id.*
Focusing then on Mr. Curley's subjective intent, he argued that "Mr. Curley did not
intend to receive $130,000, or anything close to that amount, from Vescom." *Id.* at
10. Furthermore, he contended that Vescom "never considered paying Mr. Curley
$130,000, or anything close to that amount." *Id.* at 11.

Mr. Curley did not mention the second argument that he now intends to raise
on appeal—the non-application of a three-level reduction for incomplete crime under
U.S.S.G. § 2X1.1(b).

### 6.    The Government's Sentencing Memorandum

On December 8, 2014, the Government filed its sentencing memorandum in
which it concluded that "[t]he loss amount should be $130,000." *Gov't Sentencing
Mem.* at 10 (ECF No. 86) (*Gov't Mem.*). The Government urged the Court to reject
Mr. Curley's analogy to the fraud provisions of the Guidelines. *Id.* at 6. It pointed
out that the fraud provision, U.S.S.G. § 2B1.1, expressly includes the notion of
intended loss. *Id.* (citing U.S.S.G. § 2B1.1 n.3(A)(ii)). The Government distinguished
fraud from extortion or threatening communications, where "the defendant's
intention to carry out the threat is irrelevant." *Id.*

Moreover, the Government observed that the complete file in this case
confirmed that on July 1, 2010, before Attorney Grabell sent the demand letter to
Attorney Yesnick, Mr. Curley had expressly approved its contents: "Very well written
and represents everything accurately. I approve this letter." *Id.* at 7; *Gov't Ex.* 6.
After Attorney Grabell sent the July 1, 2010 demand letter, he wrote again on July

15, 2010, having not heard from Attorney Yesnick, and said that his client "is threatening to terminate me and file with another attorney." *Id.*

After Attorney Yesnick responded on July 16, 2010 with his "nuisance value" remark and Attorney Grabell and Mr. Curley discussed responding with $25,000, Attorney Grabell emailed Attorney Yesnick and asked to talk on the telephone. *Gov't Mem.* at 8; *Gov't Ex.* 6. Later that same day, Mr. Curley emailed Attorney Grabell "[c]urious what number you countered with." *Id.* On August 2, 2010, Mr. Curley again wrote Attorney Grabell and said "if they do not show a sincere interest to reconcile I am inclined to file an action." *Id.* On August 3, 2010, Mr. Curley suggested that Attorney Yesnick "has not taken the matter serious enough—enough to settle without litigation" and he reiterated his intention to file suit. *Gov't Mem.* at 8-9; *Gov't Ex.* 6.

### 7. The Sentencing Hearing

During the January 16, 2015 sentencing hearing, the Court addressed the parties' contentions regarding the applicability of U.S.S.G. § 2B1.1(b)(1)(F).[1] After reviewing the positions of the parties, the Court observed that Mr. Curley was relying on the following cases: *United States v. Confredo*, 528 F.3d 143 (2d Cir. 2008) (analyzing § 2F1.1, now § 2B1.1), *United States v. Diallo*, 710 F.3d 147 (3d Cir. 2013) (analyzing § 2B1.1), *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011) (analyzing § 2B1.1), *United States v. Sanders*, 343 F.3d 511 (5th Cir. 2003) (analyzing

---

[1] Although Mr. Curley ordered transcripts of the sentencing hearing, they have not yet been prepared. In view of his insistence on an immediate order, there is insufficient time to obtain a transcript and the Court is therefore at a disadvantage. The Court is going by its own notes of the sentencing hearing, which may not be exact.

§ 2F1.1), and *United States v. McCoy*, 508 F.3d 74, 79 (1st Cir. 2007) (analyzing § 2B1.1).  But the Court concluded that none of these cases was germane because Mr. Curley's conduct was covered not by U.S.S.G. § 2B1.1, the larceny, embezzlement, theft and fraud provision, but by U.S.S.G. § 2B3.3, the blackmail or similar forms of extortion provision.

The Court explained that § 2B1.1 distinguishes between "actual loss" and "intended loss" and requires that the loss amount be based on the greater of the two. By contrast, the Court pointed out that the language in § 2B3.3 and its companion, § 2B3.2, is different, containing no reference to intended loss and instead using the phrase, the "greater of the amount obtained or demanded."  U.S.S.G. § 2B3.3(b)(1); *id.* § 2B3.2(b)(2) (Extortion by Force or Threat of Injury or Serious Damage) ("If the greater of the amount demanded or the loss to the victim exceeded $10,000 . . . .").

The Court turned to the caselaw specific to the extortion provisions and observed that the courts have consistently applied the "amount obtained or demanded" language of the Guidelines.  The Court cited *United States v. Knox*, 68 F.3d 990 (7th Cir. 1995).[2]  The Court also discussed *United States v. Zhuang*, 270 F.3d 107 (2d Cir. 2001) in which a kidnapper initially demanded $68,000 in ransom,

---

[2]    The following language appears in *Knox*:

> Second, Mr. Carreiro contends that the sentencing judge erred in enhancing his sentence based upon the "amount of loss" because there was no potential "loss" to the victim.  This enhancement was justified under U.S.S.G. § 2B3.2(B)(2), which is framed in the conjunctive: the guideline only requires that the amount demanded exceed $10,000 or that the loss to the victim exceed $10,000.  Even if the victim's loss was zero, the $33,000 demanded exceeded $10,000 and, therefore, U.S.S.G. § 2B3.2(B)(2) was satisfied.

68 F.3d at 1002.

but later accepted $10,000 as an initial payment and offered to accept another $5,300 in full satisfaction. *Id.* at 108-09. The defendant in *Zhuang* cited § 2D1.1 of the 1997 Guidelines by analogy for the proposition that "a defendant's sentence may be reduced if he shows that he either did not intend or was not reasonably able to supply a negotiated amount of narcotics." *Id.* at 109. The Second Circuit Court of Appeals dispatched the analogy: "Zhuang cites no cases in support of this analogy."[3] *Id.* The Court interpreted *Zhuang* as rejecting the analogy in favor of the plain language of the Guidelines.

The Court reviewed *United States v. Nicolescu*, 541 Fed. Appx. 93 (2d Cir. 2013). In *Nicolescu*, home invaders demanded $8.5 million dollars from the victims and the sentencing court applied that demand. *Id.* at 98-99. The Second Circuit Court of Appeals rejected the defendant's argument that the sentencing judge should have applied the probable loss over the demand.[4]

The Court went on to discuss the possible reasons the Guidelines treat fraud and extortion differently. Taking a typical fraud, such as a Ponzi scheme, the Court noted that the repercussions of the fraud sometimes ripple out far beyond what the schemer originally intended to unknown victims and unknown amounts. By contrast, with extortion, the level of the demand is interwoven in the crime itself and the victim of the demand is known. Thus, in *Zhuang*, when the kidnappers took a family

---

[3]     The *Zhuang* Court noted that although the application note to § 2D1.1 instructs the court to consider the defendant's intent or reasonable ability to commit the crime, there is "no such application note appended to § 2B3.2." 270 F.3d at 109.
[4]     The *Nicolescu* Court characterized as "without merit" the defendant's claim that the correct measure was the so-called "probable loss." 541 Fed. Appx. at 98-99.

member, the level of the initial demand was calculated to have an impact on the victim.

The Court addressed the facts in this case and their applicability to extortion, not fraud. First, Mr. Curley knew there were only three people at the lunch: Mr. Curley, Mr. Treadwell and Ms. Treadwell. He knew that he had presented a classic, "he said-she said," which posed a problem for Vescom because Vescom would have had to prove that something had not happened. Second, Mr. Curley knew that the nature of the allegation was sensational. He had claimed that Mr. and Ms. Treadwell were swingers, had sexual fantasies about three-way sex, and had demanded that he engage in such a liaison in exchange for a job. Third, Mr. Curley alleged that the Treadwells had made homophobic statements about his HIV status and his homosexuality. In fact, he made the serious accusation that Mr. Treadwell was perverted. Fourth, Mr. Curley was aware of the nature of Vescom's business, which was security. He knew, having worked in the security business, that most business customers have to trust the people they are entrusting with security and that his allegations could have had an impact on Vescom's reputation. Fifth, Mr. Curley also said that the Treadwells' actions discriminated against him because of his HIV status, a claim that could well have drawn attention to his story from AIDS activists and the media.

The Court observed that Attorney Grabell's July 1, 2010 letter, which Mr. Curley expressly approved, pushed each of these buttons. Attorney Grabell alleged quid pro quo harassment and retaliation, quoted false dialogue, pointed the Vescom's

need to avoid costs of litigation, notoriety, adverse publicity, and suggested that a jury might award six or even seven figures. With this backdrop, the demand of $130,000, one year's salary plus attorney's fees, was itself the attempted extortion and the Court observed that Attorney Yesnick later characterized the demand as blackmail. Finally, the Court observed that Mr. Curley could not have known how Vescom would respond. The Court noted that businesses are sometimes willing to buy a separate peace, to avoid paying defense counsel, to escape the specter of bad publicity and to eliminate the likelihood that, as it depended on contested facts, it was unlikely to resolve absent a jury trial. In short, the Court concluded that the $130,000 demand was integral with the attempted extortion and that Attorney Yesnick had later properly characterized the episode as blackmail.

For all of these reasons, the Court concluded that the PO recommendation of a ten-level enhancement was justified by the Guidelines and by the facts in this case. Based upon a total offense level of 16 and a criminal history category of I, the Court found that Mr. Curley's guideline range was 21 to 24 months.[5] The Court imposed a 24 month sentence, the high end of the Guideline sentence range, but allowed Mr. Curley to self-report by April 17, 2015.

## 8. Post-Sentencing Developments

On January 26, 2015, Mr. Curley filed a notice of appeal. *Notice of Appeal and Req. for Leave to Withdraw as Counsel* (ECF No. 93). Subsequently, Mr. Curley filed

---

[5]     Mr. Curley's guideline range was 21 to 27 months, but the statute capped Mr. Curley's sentence of imprisonment to two years, squeezing down the guideline range down to 21 to 24 months. 18 U.S.C. § 875(d) ("shall be fined under this title or imprisoned not more than two years, or both"); PSR ¶ 50.

a motion for stay of voluntary surrender and for bail pending appeal on March 11, 2015. *Mot. for Stay of Voluntary Surrender and for Bail Pending Appeal* (ECF No. 99) (*Def.'s Mot.*). On March 20, 2015, the Government responded in opposition. *Gov't's Mem. in Opp'n to Def.'s Mot. for Release Pending Appeal* (ECF No. 101) (*Gov't's Opp'n*). Finally, on March 31, 2015, Mr. Curley sent a letter to the Court requesting an expedited ruling given that his voluntary surrender date is April 17, 2015 in order to allow Mr. Curley "sufficient time to file a notice of appeal of any denial of that Motion before April 17th, his voluntary surrender date." *Letter Mot. to Expedite Resolution of Pending Mot.* at 1 (ECF No. 102); *see United States v. Cameron*, No. 11-1275, *Order of Ct.* at 1 (1st Cir. Aug. 9, 2011) (granting defendant's motion for bail pending appeal following district court's denial of the same).

## II.   THE PARTIES' POSITIONS

### A.   Defendant's Motion

Pursuant to 18 U.S.C. § 3143(b) and Federal Rule of Appellate Procedure 9, Mr. Curley requests that the Court stay his voluntary surrender and for continuation of bail pending appeal. *Def.'s Mot.* at 1. In support of his motion, Mr. Curley makes the following points: (1) he has appeared at every scheduled court date and complied with all bail conditions; (2) he has no prior criminal history; (3) his offense of conviction was "nonviolent"; (4) the Government agrees he "is not likely to flee or pose a danger if released"; and (5) "[t]he pending appeal raises substantial questions of law likely to result in a shorter term of imprisonment." *Id.* at 2.

On appeal, Mr. Curley states that he intends to raise two issues: (1) the Court's application of the ten-level enhancement based on the settlement demand made by his attorney, arguing that "[i]f the amount in question, for the purpose of the extortion guideline, is limited to that amount which a defendant intended or expected to receive, then the guidelines calculation here was in error," *id.* at 3, and (2) the non-application of a three-level reduction for incomplete crime under U.S.S.G. § 2X1.1(b). *Id.* at 4. According to Mr. Curley, if the first argument—the ten-level enhancement—is successful, his "guideline range could have been as low as 0-6 months, and he would have been eligible to receive a sentence of probation, community confinement or home detention in lieu of imprisonment." *Id.* at 3. Similarly, he argues that if the three-level reduction were applied, his "guideline range would be 12-18 months, and he would be eligible to serve up to one-half of his minimum term of imprisonment in community confinement or home detention." *Id.* at 5.

### B.    Government's Opposition

The Government agrees with Mr. Curley that he is not likely to flee or pose a danger, but it opposes his motion on the basis that his appeal does not raise a "'substantial question,' or that resolution of that question is likely to result in reversal, a new trial or a greatly altered sentence." *Gov't's Opp'n* at 3.

Regarding the ten-level enhancement, the Government points out that the Court "carefully considered and rejected the 'loss amount' issue Defendant now seeks to raise on appeal," including "after thorough briefing, oral argument and a careful review of the record facts, including the litigation file of the attorney who represented

Defendant when the extortionate demand was made." *Id.* at 3-4. Thus, in the Government's view, the ten-level enhancement issue is "not close." *Id.* at 4 (internal quotation marks omitted).

Addressing the non-application of the three-level reduction under U.S.S.G. § 2X1.1, the Government asserts that because this argument was never raised before now, Mr. Curley has the additional burden of proving that the Court committed plain error in not applying it. *Id.* Citing an array of caselaw, the Government argues that "[t]he fact that he received no money does not . . . render his crime incomplete, such that Section 2X1.1(b)(1) should apply," and thus, Mr. Curley has not met his burden. *Id.* at 4-6.

## C.    Defendant's Reply

Mr. Curley did not reply to the Government's response.

## III.    DISCUSSION

### A.    Standard for Release Pending Appeal under 18 U.S.C. § 3143(b)

A defendant shall remain detained during the pendency of his appeal, unless the judge finds:

> (A)    by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B)    that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
>> (i)    reversal,
>> (ii)    an order for a new trial,
>> (iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). Where a court finds subparagraph (B)(iv) applicable, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." *Id.* It is the defendant's burden to satisfy these statutory elements. *See United States v. Colon-Munoz*, 292 F.3d 18, 20 (1st Cir. 2002). Furthermore, regardless whether the crime is one of violence, detention is mandatory unless the defendant meets this burden. *Id.*

### 1. Likelihood of Mr. Curley Fleeing or Posing a Danger if Released

The Court agrees that Mr. Curley is not likely to flee or pose a danger to the safety of any other person or the community if released, pursuant to § 3143(b)(1)(A). Mr. Curley attended all scheduled court proceedings, he complied with all bail conditions, he has no prior criminal history, and his crime of conviction—extortion— is non-violent. The Court concludes that Mr. Curley has satisfied § 3143(b)(1)(A) by clear and convincing evidence.

### 2. Substantial Questions of Law

The parties draw swords on whether Mr. Curley's appeal "raises a substantial question of law . . . likely to result in" a sentence that falls under one of the four possibilities in § 3143(b)(1)(B). Mr. Curley points out that if his motion is denied and he begins serving his sentence as scheduled, it is very unlikely that his appeal will be completed by October 17, 2015, which would constitute six months' imprisonment and

exceed the potential 0 to 6 months range if the ten-level enhancement were found inapplicable. *Def.'s Mot.* at 3.

The First Circuit has stated that "[t]he 'likely to result' standard is applied flexibly—a question that can be regarded as 'close' will often suffice." *Colon-Munoz*, 292 F.3d at 20 (quoting *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985)). Said another way, a "close" question is "'one that very well could be decided the other way.'" *Bayko*, 774 F.2d at 523 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). Whether a question is "close" is "made on a case-by-case basis." *Id.* Furthermore, the Eleventh Circuit observed that the absence of controlling precedent or precedent in that circuit does not mean the question is "substantial"; instead, it may mean there is "no real reason to believe that this circuit would depart from unanimous resolution of the issue by other circuits." *Giancola*, 754 F.2d at 901; *see also Bayko*, 774 F.2d at 523 (adopting the *Giancola* test and rejecting the Third Circuit formulation under *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985) defining a "substantial question" as one that "is either novel, which has not been decided by controlling precedent, or which is fairly doubtful").

Furthermore, the *Bayko* Court observed that as a general rule a defendant may not raise new arguments to support release on appeal. 774 F.2d at 517-18. That said, there is an exception if a new issue constitutes "plain error" on the part of the district court or is "so compelling as virtually to insure appellant's success." *Id.* at 518 (internal citations and quotation marks omitted). To establish plain error, the moving party must show "'(1) that an error occurred (2) which was clear or obvious

and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Mercado*, 777 F.3d 532, 536 (1st Cir. 2015) (quoting *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001)).

With these principles in mind, the Court turns to the merits of Mr. Curley's motion.

### a. The Ten-Level Enhancement under U.S.S.G. §§ 2B1.1 and 2B3.3

Pursuant to U.S.S.G. § 2B3.3(b)(1)(B), "[i]f the greater of the amount obtained or demanded . . . exceeded $5,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount." Section 2B1.1(b)(1) instructs the Court to apply a ten-level enhancement if the amount demanded was greater than $120,000 but less than $200,000. *Id.* § 2B1.1(b)(1)(F)-(G). Under U.S.S.G. § 2B1.1 n.3(A)(ii), an intended loss "means the pecuniary harm that was intended to result from the offense." This definition "includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* Based on this definition, Mr. Curley argues that a substantial question of law is raised as to whether "the reference in U.S.S.G. § 2B3.3(b) to the loss table in U.S.S.G. § 2B1.1 necessarily references as well the mens rea component of 'intended loss.'" *Def.'s Mot.* at 3.

As the Court observed at the sentencing hearing, the plain language of § 2B3,3(b)(1) instructs the Court to calculate the total amount based on "the greater of the amount obtained or *demanded*." U.S.S.G. § 2B3.3(b)(1) (emphasis added).

18

Reading this provision on its face, the amount obtained was $0, but the amount demanded was $130,000, and taking the greater of the two figures as instructed by the provision led it to assign a ten-level enhancement pursuant to the table contained in § 2B1.1(b)(1). Furthermore, at the sentencing hearing, the Court reviewed the cases Mr. Curley cited and found that they addressed the fraud guideline, a different and distinguishable provision of the Guidelines, and the Court extensively analyzed the Government's cases to the extortion Guideline provision and determined that they were consistent with the PO recommendation and the Government's position.

Mr. Curley's cryptic motion merely echoes his insistence at the sentencing hearing that the Court is in error. The motion cites no caselaw. It makes no argument other than making a blanket assertion that he is right. Mr. Curley cites the fraud provision of the Guidelines, U.S.S.G. § 2B1.1 (Intended loss "means the pecuniary harm that was intended to result from the offense . . . ."), without attempting to explain why the Court should reassess its conclusion at sentencing that this provision is inapplicable. If there is convincing argument that the Court was mistaken in applying the extortion Guideline to a crime of extortion (and the Court doubts there is), Mr. Curley has not made it. In short, Mr. Curley has come woefully short of meeting his burden of demonstrating  that his appeal "raises a substantial question of law . . . likely to result in" an outcome that falls under one of the four possibilities in § 3143(b)(1)(B).

### b.    The Three-Level Reduction under U.S.S.G. § 2X1.1

Under the Sentencing Guidelines, an attempt receives a three-level reduction,

> unless the defendant completed all the acts the defendant believed
> necessary for successful completion of the substantive offense or the
> circumstances demonstrate that the defendant was about to complete
> all such acts but for apprehension or interruption by some similar event
> beyond the defendant's control.

U.S.S.G. § 2X1.1(b)(1). Mr. Curley argues he meets this standard. Mr. Curley never raised this issue before now, and thus, he must show that the sentencing court committed plain error or the issue is so compelling as virtually to insure Mr. Curley's success. The Court readily concludes that the First Circuit would rule that Mr. Curley has not met his burden.

The statute under which he was convicted provides:

> Whoever, with intent to extort from any person, firm, association, or
> corporation, any money or other thing of value, transmits in interstate
> or foreign commerce any communication containing any threat to injure
> the property or reputation of the addressee or of another . . . .

18 U.S.C. § 875(d). The key word here is "intent." The statute does not require Mr. Curley to have obtained any property from the victims by extortion to complete the crime, rather, he only has to have *intended* to extort money or other thing of value via a communication that was transmitted in interstate commerce.

This definition of "extort" differs from the definition of "extortion" under 18 U.S.C. § 1951(b)(2), which "means the *obtaining of property* from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right" (emphasis added). Here, Mr. Curley's numerous emails and settlement demand made via his attorney meet the statutory definition, as well as the standard articulated by the First Circuit for proving a § 875 violation. *See United States v. Nishnianidze*, 342 F.3d 6, 14-15 (1st Cir. 2003). To commit this crime

under § 875(d), Mr. Curley need not have actually received any money from the victims. Plus, by pleading guilty to a violation of § 875(d), Mr. Curley is in a difficult position to argue that the Guidelines trump the statutory elements of his offense, each of which he admitted to when he pleaded guilty.

Finally, Mr. Curley's argument runs counter to the precise language of U.S.S.G. § 2B3.3(b)(1), which uses the phrase "the amount obtained or demanded." Section 2B3.3 expressly cross-references other applicable sections, but not § 2X1.1(b)(1). U.S.S.G. § 2B3.3(c). If the Guidelines intended to treat attempts to extort more gently, the Guidelines would have cross-referenced § 2X1.1(b)(1), but they do not.

The Court concludes that Mr. Curley has not met his burden to prove that the First Circuit would rule that this newly raised issue is one that constitutes plain error or is so compelling as virtually to ensure his success. In short, the Court concludes that Mr. Curley has failed to meet his burden under § 3143(b)(1)(B).

## IV. CONCLUSION

The Court GRANTS the Defendant's Letter Motion to Expedite Resolution of Pending Motion (ECF No. 102) and DENIES Motion for Stay of Voluntary Surrender and for Bail Pending Appeal (ECF No. 99).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2015